NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-351

ADOPTION OF ED.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is an appeal from an order of a judge of the Juvenile Court allowing a motion to modify a visitation order that provided for no fewer than four annual supervised posttermination visits between the mother and her son, Ed.  The visitation order issued in connection with a decree terminating the mother's parental rights to Ed and placing him in the permanent custody of the Department of Children and Families (department).[2]  The visitation order provided that the visits could be terminated if doing so was reasonably determined by the

---

[1] A pseudonym.

[2] The decree was affirmed by a panel of this court in an unpublished memorandum and order pursuant to our Rule 23.0.  See Adoption of Ed, 101 Mass. App. Ct. 1118 (2022).  The putative father's parental rights were also terminated; he is not a party to this appeal.

child's legal custodian to be in the child's best interests. Several months after the decree issued, the department in 2020 stopped providing visits between the mother and the child, and the visits did not resume for over one year.[3]  On November 11, 2022, sometime after visits resumed, counsel for the child filed a motion to modify the visitation order by terminating it, on the ground that the visits were no longer in the child's best interests.  Following a nonevidentiary hearing on April 11, 2023, the judge granted the motion the same day.  The mother, now represented by new counsel, appeals from the order allowing the motion to modify visitation, arguing that (1) the department was required to file a motion to modify the visitation order before stopping the visits in 2020; and (2) the judge should not have allowed the 2022 motion for modification absent a more thorough investigation as to whether the original visitation order still served the child's best interests.  The child joins in the mother's brief.  We affirm.

Discussion.  1.  Visitation order.  The visitation order, set forth in paragraphs 7-10 of the decree, states the following:[4]

_____

[3] Notably, nothing in the record indicates that the mother objected when the department stopped visits in 2020.

[4] The judge struck paragraphs 7 and 8 from the order after allowing the motion to modify.

2

"7. that [the mother] shall be allowed no less than four (4) supervised visits with the child per year;

"8. that [the mother] and the child's legal custodian shall agree upon the date of each supervised visit at least one month prior to the next visit date;

"9. that such supervised visits may be discontinued at any time as reasonably determined by the child's legal custodian to be in the child's best interests;

"10. that no visit shall be required if [the mother] is incarcerated, hospitalized or residing in a treatment/medical facility, unless the child's legal custodian determines that such a visit is in the child's best interests."

To be clear, there is no dispute that the department was the child's legal custodian. Furthermore, the plain language of paragraph 9 of the order provides that the child's legal custodian may discontinue visits at any time so long as the custodian reasonably determines that discontinuing visits is in the child's best interests. Nevertheless, the mother argues that because "[a] judicial order for post-termination or post-adoption visitation with a biological parent is for the benefit of the child, [there should be] a reflection of the judge's determination that, at that time, the child's interests would best be served by such an order," and a judicial order is required to modify or terminate such visits. See Adoption of Rico, 453 Mass. at 749, 756 (2009). Therefore, notwithstanding the language of paragraph 9, the mother contends that the department in 2020 "did not have authority to cut off the visits

3

on its own."  While the argument may have some intuitive appeal, the mother has not cited, and we have found no authority supporting a conclusion that a judge cannot fashion a visitation order that permits a legal custodian to discontinue court-ordered visits if the custodian reasonably believes that such visits are not in the child's best interests.  In fact, case law supports the opposite conclusion.  See Adoption of Douglas, 473 Mass. 1024, 1027-1028 (2016), and cases cited therein.  Accordingly, given the permissive language in the visitation order, the department was not required to seek a court order before suspending the visits with the mother.[5]  As the plain language of the order required, the decision only needed to have been objectively reasonable.  Of course, if deemed warranted, the legal custodian can allow visits to resume, as it did here.

2.  Motion to modify.  The mother next argues that, at a minimum, the visitation order should not have been modified absent a more thorough investigation as to whether the original order still served the child's best interests.  We are not persuaded.

---

[5] We disagree with the mother that paragraphs 9 and 10 of the visitation order render paragraphs 7 and 8 superfluous. That the order allowed the department to discontinue visits under certain circumstances does not mean that visits were within the department's sole discretion.

A "decision to order posttermination or postadoption visits is left to the judge's discretion." Adoption of West, 97 Mass. App. Ct. 238, 247 (2020). "The best interests of the child are the overarching and governing concern." Adoption of Rico, 453 Mass. at 754. However, because "[a]doptive parents have the same protected interest in their relationship with the adoptive child as biological parents, . . . once a preadoptive family has been identified, a judge must balance the benefit to the child of an order of visitation . . . with the intrusion that an order imposes on the rights of the adoptive parents, who are entitled to the presumption that they will act in their child's best interest." Adoption of Ilona, 459 Mass. 53, 64-65 (2011).

Here, a nonevidentiary hearing was held on the motion to modify, all parties were represented by counsel, and no one objected to the hearing or requested an evidentiary hearing. At the hearing, the child's counsel expressed that the department in 2020 had decided to suspend visits after determining that they were no longer "clinically" beneficial. Counsel then stated that since visits had resumed, the child takes "a huge part of the visit to warm up, a half an hour or 45 minutes" and is "upset coming back after visits." The child's counsel also represented that the preadoptive parents were hesitant to commit to adoption if they would be ordered to provide visitation because of previous conflicts with the child's parents, which

5

included the mother and the father filing reports of abuse or neglect against them pursuant to G. L. c. 119, § 51A.

In response, counsel for the mother asserted, inter alia, that the most recent visit was a great visit, and that the child "hug[ged] [the mother], and call[ed] her mom." Counsel also argued that given the documented bond between the mother and the child, the mother should not be faulted if the child was now confused, or his behavior had changed due to the department's 2020 decision to suspend visits. In contrast, the department represented that during their most recent visit, the mother's bond with the child was not as evident as she contended.[6]

Here, the mother's argument concerning the need for an evidentiary hearing is waived on appeal as it was not raised before the hearing judge. See Adoption of Mary, 414 Mass. 705, 712 (1993). After reviewing the hearing transcript and the parties' arguments, we cannot conclude that the judge abused her discretion in determining that it was, at the time of the hearing, in the child's best interests to modify the visitation order to leave all visits to the discretion of the child's legal custodian. See Adoption of Ilona, 459 Mass. at 63-65.

---

[6] Counsel for the department stated that during the most recent visit, the child did not want to go into the room to meet mother, and ended up "running away from her[,] saying, 'Don't touch me.'" Thereafter, counsel said that the visit went well for forty-five minutes before the child became aggressive and wanted to leave.

Accordingly, the judge's order allowing the motion to modify visitation is affirmed.[7]

> So ordered.
>
> By the Court (Henry, Desmond & Englander, JJ.[8]),
>
> *[signature: Paul Little]*
>
> Clerk

Entered:  July 29, 2025.

---

[7] During oral argument before us, counsel for the department expressed concern that the child is still in the department's custody and has yet to be adopted by his preadoptive parents, who have now been caring for him for over five years.  Counsel then stated that he would move for a hearing in Juvenile Court because he "want[s] this case resolved for this child."  We agree that the department should expediently move to resolve this case.

[8] The panelists are listed in order of seniority.